IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID J. DAVIS, JR., #582332 § | | |
| A.K.A. THUNDER CLOUD DAVIS § | | |
| § | | |
| VS. § | | CIVIL ACTION NO. 6:08cv79 |
| § | | |
| CHERYL KYLE, ET AL. § | | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff David J. Davis, Jr., a.k.a. Thunder Cloud Davis, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The complaint was filed on March 11, 2008. On May 8, 2008, the case was dismissed pursuant to the "three strikes" provisions of 28 U.S.C. § 1915(g). On March 27, 2009, the Fifth Circuit vacated the judgment and remanded the case for further consideration because one of the cases counted as a strike was no longer final since the Plaintiff filed a notice of appeal.

The Plaintiff asserted that he was diagnosed in 2004 with hyperinsulinism by Dr. Kuykendall, who neglected to record the condition in the medical chart as a continuing medical need. He did not learn about the omission until after Dr. Kuykendall left the Coffield Unit. Dr. Orig subsequently reordered treatment for low blood sugar, but he likewise failed to record the Plaintiff's condition as

1

a continuing medical need in the medical chart. He appealed to Cheryl Kyle, the Unit Medical Administrator, who failed to address his concerns and discontinued his treatment for low blood sugar. The Plaintiff attached his grievances to the complaint. Dr. Orig's response shows that he reviewed the Plaintiff's medical record and found that all of his tests were within normal range, except for one high test on December 4, 2007.

The Court notes that a related case by the Plaintiff against a food services manager was tried in *Davis v. DeFoor*, Civil Action No. 6:05cv242. A bench trial was conducted before United States Magistrate Judge Judith K. Guthrie on April 12, 2006. The Plaintiff testified that in October, 2004, Dr. Kuykendall determined that he had hypoglycemia and prescribed him a hypercaloric diet. The Plaintiff noted that he did not receive any snacks associated with a hypercaloric diet, except for evening meals. Captain DeFoor was sued because he was in charge of food services. The Plaintiff testified that after the *Spears* hearing was conducted in that case, all of the medical records documenting his hypoglycemia disappeared. His name was removed from the hypercaloric diet list. Dr. Kuykendall, who was retired, testified at trial that he did not recall having a conversation with the Plaintiff about hypoglycemia, and he could not find any evidence of the condition in the medical records. The Plaintiff provided his own copy of the medical records to Dr. Kuykendall, which revealed that the Plaintiff's blood sugar was 37 on October 14, 2004. Dr. Kuykendall testified that the reading of 37 was well below normal and consistent with hypoglycemia. Copies of the medical records provided to the Court at the *Spears* hearing showed that Dr. Kuykendall ordered a hypercaloric diet for twelve months on October 24, 2004. Dr. Kuykendall testified that hypoglycemia means low blood sugar and that hypercaloric diets involving snacks in addition to regular meals were ordered "pretty liberally." He added that he apparently neglected to log it in, so

it did not show up as a continuing medical need in the remainder of the medical records. On April 17, 2006, the Court found in favor of Captain DeFoor because the preponderance of the evidence did not show that he was deliberately indifferent. The Fifth Circuit dismissed the Plaintiff's appeal on May 31, 2006.

On June 10, 2009, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. A *Spears* hearing is a proceeding which allows a litigant to offer sworn testimony in support of his allegations. The Fifth Circuit has stated that a *Spears* hearing is appropriate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. Warden Dewayne Dewberry, Nurse Tara Patton and Regional Grievance Officer Edith Petty attended the hearing in the event that the Court wanted sworn testimony concerning information contained in the Plaintiff's records.

The Plaintiff testified that he was diagnosed with hypoglycemia in 2004, but the diagnosis was not recorded in his medical records as a continuing medical need. Treatment in the form of snacks was discontinued because the diagnosis was not recorded. The Plaintiff testified that Dr. Orig subsequently reordered the treatment, but he likewise failed to record his condition as a continuing medical need in the medical records. The Plaintiff stressed that his condition has never been recorded, and he wants the diagnosis to be placed in the record.

The Plaintiff testified that he sued Medical Administrator Cheryl Kyle because he wrote to her and explained the problem, but she did not acknowledge his complaint nor correct the problem. Her response was that there was no record of the diagnosis.

The Plaintiff sued Dr. Kuykendall because he was the first person to recognize that he had hypoglycemia, but he forgot to record the condition as a continuing medical need. He added that Dr. Kuykendall only ordered treatment. The Plaintiff testified that he first learned that Dr. Kuykendall failed to record the condition as a continuing medical need in January, 2005.

The Plaintiff testified that Dr. Orig has examined him on several occasions. He ordered tests, and blood tests showed that he had low blood sugar and was a borderline diabetic. He sued Dr. Orig because he likewise failed to record his condition as a continuing medical need. Instead, Dr. Orig only ordered treatment for a twelve month period of time. In answer to a question about why it was significant to record the condition as a continuing medical need since treatment was ordered, the Plaintiff explained that treatment was discontinued when the twelve month period expired. He then had to start the process all over again in order to be placed back on the list for treatment.

The Plaintiff testified that he had discovered the identity of the unknown UTMB employee defendant, who was John Murray. He stated that John Murray was a UTMB liaison. Murray told him that he would have to go with whatever was contained in the medical record. The Plaintiff testified that he sent copies of his lab results to Murray, but Murray did not acknowledge the problem and failed to fix it.

The Plaintiff was asked to explain why he believes that the Defendants were deliberately indifferent, as opposed to simply being negligent for failing to make the entry into his medical records. The Plaintiff stated that the only thing that he knows is that they failed to make the entry and they failed to correct the problem when it was brought to their attention. The Plaintiff was also asked whether the failure to record the condition simply meant that they believed that it was unnecessary to record it since treatment was ordered. He again responded that the problem was that

treatment was discontinued at the end of the treatment period and that he had to go without treatment for several months. The Plaintiff testified that when he suffers from low blood sugar, he experiences cold sweats, confusion, stuttering and shaking. The Plaintiff testified that he is currently receiving treatment, but there are gaps every time the treatment period expires. For example, the treatment period expired the last time in either January or February, 2008, and he was not able to get it restored until October, 2008. He testified that he experienced problems from low blood sugar during the nine month period he was not receiving treatment.

Nurse Tara Patton testified under oath from the Plaintiff's medical records. She noted that multiple glucose tolerant tests had been conducted. Some showed normal results, while others showed low blood sugar. She testified that treatment for the condition is hypercaloric snacks. She could not explain why there was no entry stating that the condition was a continuing medical need. On the other hand, the entries ordering treatment for twelve month periods of time were consistent with normal practices. At the end of the twelve month period of time, a patient's condition will be reevaluated in order to determine whether the treatment should be continued.

On June 19, 2009, the Plaintiff submitted a letter to the Court, along with numerous documents. He submitted a copy of a clinic note, dated October 14, 2004, that showed that his blood sugar was 37. He was told to come to the clinic when he was feeling shaky or light headed. The clinic note was signed by Nurse Hoffman and Dr. Orig. A clinic note, dated July 3, 2007, noted that Dr. Kuykendall made a diagnosis of hyperinsulinism on October 22, 2004. A hypercaloric diet was ordered for twelve months. The clinic note was signed by Dr. Tito. The Plaintiff submitted copies of letters and grievances sent to Cheryl Kyle, along with her responses. On December 14, 2007, Kyle informed him that he was scheduled for an appointment with a provider and that only a

provider could add or remove instructions regarding medical care that should be provided for hyperinsulinism. Another response, dated January 4, 2008, noted that Dr. Tito reviewed his lab work and found that only one blood sugar test was high during the last year, while all others were normal. On February 14, 2008, Kyle told him that this was her last response and that nursing and medical staff had told him that he was not hyperinsulin. This lawsuit was filed on March 11, 2008.

## Discussion and Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238.

In the present case, Dr. Orig was still treating the Plaintiff at the time he filed the lawsuit. The Court is of the opinion that a response from him is appropriate as to whether he was deliberately indifferent to the Plaintiff's serious medical needs.

The claim against Dr. Kuykendall, on the other hand, has problems. The Plaintiff testified that Dr. Kuykendall made the diagnosis of hypoglycemia in 2004. He discovered that Dr. Kuykendall failed to record the condition as a continuing medical need in January, 2005. The lawsuit was filed on March 11, 2008. There is no federal statute of limitations for 42 U.S.C. § 1983 actions; the relevant statute of the forum state furnishes the limitations period, but federal law determines the date the accrual commences. *Owens v. Okure*, 488 U.S. 235 (1989). The statute of limitations in Texas for § 1983 actions is two years. *Burrell v. Newsome*, 883 F.2d 416, 419 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). Accrual begins "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Burrell*, 883 F.2d at 418. In the present case, the Plaintiff learned about the omission by Dr. Kuykendall in January, 2005. He did not file the lawsuit until more than three years later on March 11, 2008. The claims against Dr. Kuykendall are time-barred. The claims against Dr. Kuykendall fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Dr. Kuykendall should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The claims against Dr. Kuykendall should be dismissed for the additional reason that they do not give rise to an inference that he was deliberately indifferent. He diagnosed the Plaintiff's condition in 2004 and ordered treatment for him. During the trial in *Davis v. DeFoor*, Dr. Kuykendall testified that he apparently neglected to log it in, so it did not show up as a continuing medical need in the remainder of the medical records. The claims against Dr. Kuykendall at most shows negligence, as opposed to deliberate indifference.

Finally, the Plaintiff sued Unit Medical Administrator Cheryl Kyle and Liaison John Murray. In late 2007, Kyle responded to his complaints by noting that he was scheduled to see a provider. She subsequently denied his grievances and complaints after consulting with Dr. Orig. The Plaintiff complained that she did not correct the problems in his medical records. Murray likewise failed to take steps to correct the problem, while indicating that he would have to go with the medical records. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither individual participated in the alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. Moreover, inmates do not have a basis for a civil rights lawsuit against those who investigated their complaints and found against them.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Finally, administrators such as Kyle and Murray may not override instructions given to them by doctors, and they are not liable when they follow the instructions given to them by doctors. The claims against Defendants Kyle and Murray fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claims against Dr. Tito Orig. It is further

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**So ORDERED and SIGNED this 24th day of June, 2009.**

*[signature: John D. Love]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE