IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID J. DAVIS, JR., #582332 | § | |
| A.K.A. THUNDER CLOUD DAVIS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv79 |
| | § | |
| CHERYL KYLE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff David J. Davis, Jr., a.k.a. Thunder Cloud Davis, a prisoner previously confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants remaining in the lawsuit are Dr. Tito Orig and Nurse Practitioner Claire Russell. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #111) and the Plaintiff's response (docket entry #118).

Plaintiff's Factual Claims

The complaint was filed on March 11, 2008. On June 10, 2009, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that he was diagnosed with hypoglycemia in 2004, but Dr. Kuykendall failed to record the diagnosis as a continuing medical need in his medical records. It is noted that Dr. Kuykendall testified that he neglected to record the Plaintiff's condition as a

continuing medical need in the trial of *Davis v. DeFoor*, Civil Action No. 6:05cv242. The Plaintiff testified that treatment in the form of snacks has periodically been discontinued because the diagnosis was not recorded. The Plaintiff testified that Dr. Orig subsequently reordered the treatment, but he likewise failed to record the condition as a continuing medical need in the medical records. The Plaintiff stressed that his condition has never been recorded as a continuing medical need, and he wants the diagnosis to be placed in the medical record.

The Plaintiff testified that Dr. Orig has examined him on several occasions. He ordered tests, and blood tests showed that he had low blood sugar and was a borderline diabetic. He sued Dr. Orig because he likewise failed to record his condition as a continuing medical need. Instead, Dr. Orig only ordered treatment for twelve month periods of time. In answer to a question about why it was significant to record the condition as a continuing medical need since treatment was ordered, the Plaintiff explained that treatment was discontinued when the twelve month period expired. He then had to start the process all over again in order to be placed back on the list for treatment.

The Plaintiff was asked to explain why he believes that Dr. Orig was deliberately indifferent, as opposed to simply being negligent in failing to make the entry into his medical records. The Plaintiff stated that the only thing that he knows is that he failed to make the entry and he failed to correct the problem when it was brought to his attention. The Plaintiff was also asked whether the failure to record the condition simply meant that Dr. Orig believed that it was unnecessary to record it since treatment was ordered. He again responded that the problem was that treatment was discontinued at the end of the treatment period and that he had to go without treatment for several months. The Plaintiff testified that when he suffers from low blood sugar, he experiences cold sweats, confusion, stuttering and shaking. The Plaintiff testified that he was receiving treatment at

that time, but there are gaps every time the treatment period expires. At the conclusion of the *Spears* hearing, the Court concluded that the Plaintiff should be permitted to proceed with his deliberate indifference claims against Dr. Orig (docket entry #26). All other claims were dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Following the *Spears* hearing, on September 1, 2009, the Plaintiff was transferred to the Telford Unit. He reported to the Court that he was again being denied snacks. He argued that his life was threatened with irreparable harm because he was no longer being provided snacks. On September 16, 2009, he filed a supplemental complaint (docket entry #63) naming N. P. Claire Russell as a defendant because she was the person who discontinued his snacks. She also removed him from the Diabetic Clinic List. In addition to a deliberate indifference claim, the Plaintiff alleged a substantive due process claim for denying him medical care. The Court ordered N. P. Russell to respond to the deliberate indifference claim.

Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #111) on November 20, 2009. They argued that Defendant Russell is entitled to Eleventh Amendment immunity for claims brought against her in her official capacity. It is noted that the claims against Dr. Orig brought against him in his official capacity for damages have already been dismissed (docket entry #94). The Defendants argued that they are entitled to judgment as a matter of law on the Plaintiff's deliberate indifference and due process claims. They finally argued that the Plaintiff has not overcome their entitlement to qualified immunity for claims brought against them in their individual capacities. In support of their motion, they submitted relevant grievance records, relevant portions of the Plaintiff's medical records, an affidavit from Tori Scott noting that the Plaintiff was currently on the list of

3

inmates at the Telford Unit receiving three snacks a day and an affidavit from Dr. Monte K. Smith (docket entry #113).

The Defendants asserted that there are a number of undisputed facts. The Plaintiff was confined at the Coffield Unit at all times relevant to this lawsuit until September 1, 2009. He was transferred to the Telford Unit on September 1, 2009. They acknowledged that the Plaintiff has received diagnoses of hypoglycemia and/or hyperinsulinism due to blood tests exhibiting low blood glucose levels. They acknowledged that such diagnoses have never been recorded in the Plaintiff's medical records as a continuing medical condition. They asserted that Dr. Orig repeatedly issued twelve month medical orders for hypercaloric snacks for the Plaintiff. The Plaintiff was likewise given a twelve month order for hypercaloric snacks at the Telford Unit. He currently receives hypercaloric snacks three times a day.

The medical records, in conjunction with Dr. Smith's commentary from his affidavit, were informative in evaluating the Plaintiff's claims. Dr. Smith is a licensed physician and the Northeast District Medical Director of the University of Texas Medical Branch - Correctional Managed Care Division. He noted that the Plaintiff has a history of reactive hypoglycemia. The Plaintiff does not have a diagnosis of diabetes mellitus, meaning elevated blood sugar, and does not require treatment for diabetes such as insulin or other glucose lowering medications. He noted that reactive hypoglycemia is also sometimes referred to as hypoglycemia syndrome. Hypoglycemia is a self-limited, transient condition that occurs exclusively after meals or ingestion of a high glucose containing substance and its diagnosis is confirmed with the findings of objective, documented hypoglycemia (blood glucose of less than 50 mg/dl) in the presence of objective findings of hypoglycemia signs/symptoms which are reversed with the administration of glucose. Dr. Smith

4

specified that the cause of reactive hypoglycemia is unknown, but it is felt to be the result of excess release of pancreatic insulin (hyperinsulinism) following ingestion of a meal. The symptoms which occur during episodes of reactive hypoglycemia are self-limited, transient and are related to the activation of the body's sympathetic nervous system response to the falling glucose levels. The typical symptoms are non-life threatening and may be described by patients experiencing the symptoms as dizziness, fatigue, anxiety, irritability, hunger, headache, sweating, or tremulousness. Dr. Smith asserted that there is no established effective, curative treatment for reactive hypoglycemia and any treatment plan for the condition is aimed at amelioration of symptoms associated with this condition. In some patients, amelioration of the symptoms may be accomplished by interventions such as frequent feedings or snacks, patient avoidance of simple sugars in the diet, and a high protein diet. Although, there is no definitive evidence that making these modifications to the diet of a patient with reactive hypoglycemia is an effective treatment, the use of frequent snacks is unlikely to cause harm and may provide some benefit in symptom reduction.

Dr. Smith stated that Dr. Orig first evaluated the Plaintiff on May 23, 2007. He observed that the Plaintiff's previous two hour post-prandial glucose test (blood glucose test obtained two hours after ingestion of a meal) was performed on October 14, 2004. The test revealed an unusually low blood glucose level of 37 mg/dl, when a normal blood glucose level is 70-110 mg/dl. Dr. Orig ordered laboratory tests including a chemistry panel, lipid panel, urinalysis; counseled the Plaintiff regarding compliance with exercise, diet, medical testing; and advised the Plaintiff to avoid certain commissary foods. The lab test revealed a normal blood glucose level of 72 mg/dl. Nonetheless, on July 3, 2007, Dr. Orig cited the finding of hyperinsulinism by Dr. Kuykendall on October 22, 2004, in renewing the Plaintiff's hypercaloric diet for another twelve months.

From July through November, 2007, the Plaintiff submitted multiple sick call requests asking to have the diagnosis of hypoglycemia added to his medical record. The Plaintiff was examined by medical personnel on eight occasions during this period of time. An entry dated November 21, 2007, noted that the Plaintiff previously had blood glucose tests of 80 (5/10/2007) and 72 (6/7/2007) and that Dr. Tito's assessment was hypoglycemia. On December 4, 2007, a three hour post-prandial glucose test indicated an elevated blood glucose level of 140 mg/dl. On December 7, 2007, Nurse Practitioner Shelton reviewed the results of the blood test and her assessment was hyperglycemia with possible diabetes. On December 20, 2007, the Plaintiff submitted a sick call request claiming that he was a diabetic based on the most recent glucose blood test. Dr. Orig instructed a clerk to schedule the Plaintiff for an appointment. On December 28, 2007, he re-evaluated the Plaintiff's request to have the diagnosis of hypoglycemia and hyperinsulinism placed in his medical record. Dr. Orig noted that the Plaintiff asserted that he had been diagnosed with hypoglycemia and hyperinsulinism by a provider several years before. He specified that the Plaintiff was well nourished, well developed and in no distress. His assessment was history of hypoglycemia, and he wanted tests conducted to possibly rule out hyperinsulinism. He ordered a two hour post-prandial glucose test. He received a response from the lab saying that a three hour glucose test was just done. Dr. Orig stated that he was aware of the test, but he wanted a two hour post-prandial glucose test. The results of the two hour post-prandial test were normal at 100 mg/dl. Related C-Peptide and insulin level tests were likewise normal. The normal test results indicated that the Plaintiff did not have hyperinsulinism or post-prandial hypoglycemia at that time. On January 30, 2008, Dr. Orig issued instructions saying that the Plaintiff did not need a hypercaloric diet at that time since his serum insulin and post-prandial hypoglycemia were normal.

Dr. Orig evaluated the Plaintiff again on February 7, 2008. He noted the Plaintiff's most recent blood tests. Other medical matters, including sleep apnea, were also addressed. Dr. Orig examined the Plaintiff on March 6, 2008. He noted the Plaintiff's subjective complaints of hypoglycemia. He issued an order to the nurse to have the Plaintiff brought to the clinic for a blood sugar test if and when he was having symptoms of hypoglycemia. It is noted that the lawsuit was filed five days later on March 11, 2008. On May 20, 2008, based on the Plaintiff's continued complaints of symptoms of hypoglycemia, Physicians Assistant Nolen issued an order for daily glucose checks for one week. All of the tests were normal with a range of 95 to 98 mg/dl. On July 17, 2008, Nolan noted that the Plaintiff did not have diabetes or hyperinsulinism at that time. He added that these problems are often associated with hypertension, thus the Plaintiff's condition should be watched. The Court notes that Dr. Smith discussed in detail the care provided by Dr. Orig regarding the Plaintiff's other medical problems during this period of time.

Dr. Orig ordered additional glucose tests in September, 2008. The results were normal, both being 93 mg/dl. Dr. Orig ordered a two hour post-prandial glucose tolerance test on September 25, 2008. The result was an abnormally low 42 mg/dl. Based on the test, Dr. Orig re-evaluated the Plaintiff's condition on November 12, 2008. His assessment was "post-prandial hypoglycemia" and a hypercaloric diet was ordered for twelve months. The order remained in effect until the Plaintiff was transferred to the Telford Unit on September 1, 2009. Dr. Smith noted that the Plaintiff was seen by Dr. Orig on many occasions regarding other matters until he was transferred.

Defendant Russell saw the Plaintiff upon his arrival at the Telford Unit. The Plaintiff's Master Problem List did not include hypoglycemia. He submitted sick call requests about his snacks. He was informed that he had been scheduled for an appointment with a medical provider. On

September 4, 2009, Defendant Russell noted the Plaintiff's request for a hypercaloric diet for hypoglycemia, his normal weight and vital signs, and concluded that there was no indication for a hypercaloric diet at that time. The Plaintiff was examined by Dr. Reginaldo Stanley five days later. He ordered a medical diet to include three snacks for a period of twelve months.

    Dr. Smith, who indicated that his training was in internal medicine, expressed the opinion that the Plaintiff's claims against the Defendants are erroneous. He characterized the Plaintiff's condition as intermittent reactive hypoglycemia. He expressed the opinion that the Plaintiff does not suffer a life-threatening or serious medical condition in which serious harm would occur with periods of cessation of the order for a hypercaloric diet. He noted that reactive hypoglycemia is a relatively benign condition that may cause short-lived symptoms such as fatigue, anxiety, irritability, hunger, headache, or tremulousness, but these are transient and not life-threatening. He noted that there is no confirmed medical evidence that treatment with a hypercaloric diet (extra snacks) for patients with reactive hypoglycemia is an effective treatment, although the use of frequent snacks is unlikely to cause harm and may provide some benefit in reducing a patient's symptoms. He noted that Dr. Orig relied on objective evidence, rather than subjective symptoms, on which to make his treatment decisions. Dr. Smith stressed that Dr. Orig appropriately ordered laboratory tests in response to the Plaintiff's complaints about hypoglycemia. He asserted that Dr. Orig appropriately did not renew the Plaintiff's hypercaloric diet on January 30, 2008, when the objective results of the C-peptide, insulin level and two hour post-prandial glucose tests were normal. The normal tests revealed that the Plaintiff was not having hypoglycemia or hyperinsulinism at that time. The discontinuation of the snacks was also appropriate in light of the slightly elevated blood glucose test of 140 mg/dl during the previous December. Dr. Smith asserted that Dr. Orig was vigilant in

providing care. Dr. Smith also found that Defendant Russell's objective assessment on September 4, 2009, was appropriate in light of the normal examination with no findings of hypoglycemia at that time. Furthermore, her decision referring the Plaintiff to a physician for a determination of a need for a special diet was appropriate. The physician then renewed the hypercaloric diet for twelve months.

The Court will discuss the Defendants' legal arguments in light of the competent summary judgment evidence in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

The Plaintiff filed a response (docket entry #118) on December 9, 2009. He argued that there are disputed issues of material fact, thus the Defendants are not entitled to summary judgment. Like the Defendants, he cited medical and grievance records in support of his arguments. He placed special emphasis on the diagnosis of hyperinsulinism by Dr. Kuykendall. He noted his three hour glucose blood test result of 140 mg/dl on December 4, 2007, which led N.P. Shelton to order a hypercaloric diet, which was discontinued by Dr. Orig. He also cited the lab test of 42 mg/dl on October 4, 2008, which was well below normal. Only then did Dr. Orig place him back on a hypercaloric diet. The Plaintiff complained that Dr. Orig deliberately failed to record his hypoglycemia as a continuous medical need in his medical chart. He complained that Defendant Russell discontinued the hypercaloric diet upon his arrival at the Telford Unit. He was not placed back on a hypercaloric diet until five days later when he saw Dr. Stanley. He argued that both Dr. Orig and N.P. Russell were deliberately indifferent. Other than arguing that the facts show that the Defendants were deliberately indifferent, the Plaintiff did not specifically address the arguments presented by the Defendants.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The initial argument raised by the Defendants concerns Defendant Russell's defense of Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). For purposes of civil rights litigation, the Supreme Court has held that neither a State nor a state official acting in his official capacity is a "person" under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). The Fifth Circuit has made it clear that the "Eleventh Amendment bars recovering § 1983 money from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). On the other hand, a lawsuit may be "brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053-54 (5th Cir. 1998). To the extent that the Plaintiff is suing Defendant Russell in her official capacity, he may seek declaratory and injunctive relief but he may not obtain compensatory and punitive damages. He may seek damages against Defendant Russell to the extent that he has sued her in her individual capacity.

The next issue raised by the Defendants concerns the Plaintiff's deliberate indifference claims. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has repeatedly noted in published opinions that an inmate must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See, e.g., Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009); *Gobert*

12

*v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A disagreement with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238.

Viewed in a light most favorable to the Plaintiff, the competent summary judgment evidence in this case reveals that the Defendants were responsive to the Plaintiff's complaints about hypoglycemia. They did not ignore him. Dr. Orig routinely ordered various glucose tests. When the tests revealed that he was experiencing hypoglycemia at that time, then a hypercaloric diet was ordered. In July, 2007, when a glucose test was normal, Dr. Orig cited Dr. Kuykendall's previous findings in renewing a hypercaloric diet for twelve months despite the normal test. When the Plaintiff persisted in wanting a diagnosis of hypoglycemia recorded in his medical record as a continuous medical condition, more tests were ordered by medical personnel, including Dr. Orig. Again, he was not ignored. When the Plaintiff's glucose test on December 4, 2007, revealed an inconsistent result with an elevated blood glucose level of 140 mg/dl, Dr. Orig had additional tests run, which were normal. Consequently, on January 30, 2008, Dr. Orig issued instructions saying that the Plaintiff did not need a hypercaloric diet at that time. Several other tests were run over the following months, which were again normal. However, when a test showed an abnormally low post-prandial tolerance test of 42 mg/dl on September 25, 2008, Dr. Orig's assessment was post-prandial hypoglycemia and a hypercaloric diet was again ordered for twelve months. The competent summary judgment evidence, viewed in a light most favorable to the Plaintiff, reveals that Dr. Orig was responsive to the Plaintiff's complaints about hypoglycemia. He was not deliberately indifferent to the Plaintiff's complaints. The crux of the Plaintiff's lawsuit is that he disagrees with the

treatment plan issued by Dr. Orig, but his disagreement does not amount to deliberate indifference. *Gobert v. Caldwell*, 463 F.3d at 346; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999). Dr. Orig is entitled to summary judgment on the Plaintiff's deliberate indifference claims against him.

The Plaintiff's deliberate claims against Defendant Russell likewise lack merit. Russell did not order the continuation of the hypercaloric diet when the Plaintiff arrived at the Telford Unit because the objective evidence before her did not support a conclusion of hypoglycemia. If the objective medical evidence had supported a conclusion of a serious medical need and she had ignored it, then the Plaintiff perhaps would have a basis for a claim against her. Nonetheless, she was still responsive to his complaints and referred him to Dr. Stanley, who ordered a hypercaloric diet. At best, the Plaintiff has a claim against her based on a five day delay in receiving a hypercaloric diet. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The competent summary judgment evidence viewed in a light most favorable to the Plaintiff does not support a conclusion of deliberate indifference. Defendant Russell was responsive to his complaints and appropriately referred him to Dr. Stanley. Moreover, the Plaintiff has not shown that he experienced substantial harm as a result of the five day delay. Similarly, he failed to show that he experienced substantial harm at any time from the day he arrived at the Telford Unit until Dr. Stanley renewed his hypercaloric diet. Defendant Russell is entitled to summary judgment on the Plaintiff's deliberate indifference claim against her.

The Defendants' motion to dismiss addressed the Plaintiff's due process claims even though he has not been permitted to proceed on due process claims. Nonetheless, the Defendants correctly

14

argued that the Supreme Court has specifically held that Fourteenth Amendment due process claims are redundant and unnecessary where the Eighth Amendment more specifically applies. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). *See also Estelle v. Gamble*, 429 U.S. at 104. The Plaintiff did not address the argument, and the Court finds that it is persuasive.

The final issue raised by the Defendants is qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). A court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The Fifth Circuit has accordingly held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis and that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

In the present case, the Plaintiff has not satisfied his burden of showing a violation of his constitutional rights. Moreover, he has not satisfied his burden of showing that the actions of the Defendants were not objectively reasonable in light of the legal rules that were clearly established at the time their actions. The Defendants are thus entitled to have the claims against them dismissed based on qualified immunity. The Defendants are entitled to summary judgment with respect to all of their arguments. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #111) is **GRANTED** and the case is **DISMISSED** with prejudice. It is further

**ORDERED** that all motions not previously ruled on are **DENIED**. It is finally

**ORDERED** that the pretrial conference scheduled for February 24, 2010, and the jury trial scheduled for March 8, 2010, are **CANCELLED**.

**So ORDERED and SIGNED this 8th day of January, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE